Cornelius McCLOUD, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 46256.

Court of Criminal Appeals of Texas.

May 30, 1973.

Marion J. Borchers, New Braunfels, O. T. Moore, Jr., Lockhart, for appellant.

Richard Fielder, Lockhart, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal arises out of a conviction for robbery by assault with firearms wherein the punishment was assessed at ten (10) years by the court following a guilty verdict.

The case was tried in Caldwell County following a change of venue from Comal County.

The sufficiency of the evidence is not challenged. Suffice it to say, the State's evidence reflects that about 8 p. m. appellant and another man entered Carl's Liquor Store in the City of New Braunfels and demanded to see the manager of the store. Melba Vroman called her husband, Carl Vroman, who, when he appeared, was struck by the appellant who was wearing metal knuckles. When Mrs. Vroman protested, she, too, was struck by the appellant, who then returned to his attack upon Mr. Vroman demanding money. Mr. Vroman also noticed that appellant's companion had a sawed-off shotgun pointed at him and he gave the appellant approximately $100 to $125 in cash. About this time Mrs. Vroman was able to pull a pistol from her clothing and began to fire at the appellant, who made a hasty exit. Mr. Vroman followed and fired other shots at the fleeing man, who left in an automobile headed toward Seguin.

Police were summoned and they found that the Vromans were both covered with blood. Their wounds required a number of stitches.

Later, about 8:20 p. m., the officers learned that a man suffering from five gunshot wounds had been received at the Guadalupe Valley Hospital in Seguin. Upon their arrival, they observed a blood-

splattered car at the emergency entrance to the hospital and, inside, a sawed-off shotgun. The officers obtained a search warrant and recovered the shotgun. Appellant was identified as the wounded man in the emergency room. He was later moved to the Bexar County Hospital in San Antonio where he was subsequently arrested.

Ella McKnight testified that the appellant was her brother-in-law and that on the evening in question a man known to her as "Greyland" or "Garland" or "Garland Evans" brought the wounded appellant to her house in Seguin and that she drove the appellant in his car to the hospital.

Moscow Anthony, who was related to appellant's wife by marriage, testified that he was in appellant's home on the date in question and that appellant and an unidentified man left the home together about 7 p.m.

Appellant's wife, Dorothy, testified the man with whom the appellant left on the date in question was known to her only as "Slim." When asked if she had made any effort to locate this individual, she responded, "Not really . . . ."

Testifying in his own behalf, appellant related he had known "Slim" for approximately a month and a half prior to the occasion in question having met him at the Domino Shack in Seguin; that on March 27, 1970 "Slim" came to his house and requested him to take him ("Slim") to New Braunfels "to check on his broad, which is a lady . . .," and that he complied. He testified further that they were unable to locate "the lady" and they drove to Carl's Liquor Store so that "Slim" could get something to drink. After waiting a while for "Slim", the appellant decided to enter the store and related that as he did, he observed "Slim" leaving, and, at the same time, the woman in the store shot him; that he fled, got in his car which he

presumed "Slim" was driving and he then could only recall awakening in the Bexar County Hospital.

Initially, appellant contends the court erred in overruling his third motion for continuance which he entitled "First Application For Continuance, By The Defendant, For The Want of a Witness."[1]

The indictment was presented on May 6, 1970, and the above-described motion was heard on October 27, 1971, four days prior to trial. Just when it was filed does not appear from the record. The sworn motion alleged that a witness named "Slim", who resided "in or about Guadalupe County," was absent and that due diligence by appellant's attorney, wife, and mother had failed to reveal the witness' whereabouts and who was "reported" to be in the State of Kentucky; that it was expected to be proven by such witness that the appellant had only offered a ride to the witness who preceded the appellant into the liquor store in question and that the appellant entered only in time "to be the recipient of five (5) gunshot wounds"; that the witness was not absent by procurement or consent of the appellant; that the motion was not made for delay, etc.

It appears that the appellant was attempting to comply with the provisions of Article 29.06, Vernon's Ann.C.C.P. It does not appear that any evidence was offered to support the motion before it was overruled.

We need not determine the sufficiency of the pleading because we do not conclude the court abused its discretion under Article 29.06, supra.

■ Further, appellant filed a motion for new trial based, in part, on the failure of the court to grant the said motion. It is well established that a motion for new trial, based upon the overruling of a motion for continuance, should have the affidavit of the missing witness or a showing

---

1. The first two motions were not based on the absence of a witness and the record does not reflect they were acted upon.

under oath from some source that the witness would actually testify to the facts set forth in the motion for new trial. This was not done in the case at bar. See Palasota v. State, 460 S.W.2d 137, 139 (Tex. Cr.App.1970); Ikner v. State, 468 S.W.2d 809 (Tex.Cr.App.1971).

Appellant's counsel further candidly admitted in oral argument before this court that even at this late date the witness has not been located.

█ We cannot conclude the court erred in overruling the motion for continuance.

In the fact situation here presented, appellant's reliance upon Washington v. Texas, 385 U.S. 812, 87 S.Ct. 123, 17 L.Ed.2d 54 (1960); Overton v. State, 419 S.W.2d 371 (Tex.Cr.App.1967); Ex parte Pennington, 471 S.W.2d 578 (Tex.Cr.App. 1971), is misplaced.

As the State points out, if appellant's contention has "any validity, then, it would be true that there never could be a conviction of a defendant until every co-participant had been identified, caught and made available to the defendant for testimony."

With an overtone of a claim of suppression of evidence, the appellant also apparently asserts that the trial court should have reconsidered his motion for continuance or should have sua sponte granted a mid-trial motion for continuance when Leroy Schneider, Seguin Chief of Police, testified he had heard the name of "Grady or Garland Evans" "in connection with this court" from the individual (Edna McKnight), who allegedly took the appellant to the hospital. At the time of such testimony, the appellant did not, either orally or in writing, renew his motion for continuance, nor ask for any other process or relief.

It is observed that during the earlier cross-examination of Officer O'Connell appellant's counsel first inquired whether the witness had ever heard the name of "Graddy Evans" and the witness responded he had heard the name of "Garland Ev-

ans" during the investigation of the instant case. On re-direct examination, the witness revealed that he had also heard the name of "Garland Williams" and "Slim", as supposedly being the name of the second individual involved in the offense, and that information received was that he was "in the military" but that further checking revealed he had gone "AWOL," and that he did not know the present whereabouts of such individual.

█ We cannot agree that under the circumstances presented the court erred in failing to take action after Chief Schneider's testimony or that the State suppressed the name of the individual.

Appellant's second and third grounds of error are as follows:

"That the trial court committed reversible error by not sustaining and enforcing defendant's motion for discovery and by not granting a mis-trial or a continuance during the course of the trial upon the discovery of the identity of the witness-co-participant and by admitting the testiony of LEROY SCHNEIDER and the pictures taken by the complaining witnesses, CARL G. VROMAN and MELBA SCHUBERT VROMAN, JAMES O'CONNELL AND LEROY SCHNEIDER."

and

"That the trial court committed reversible error by failing to grant and enforce discovery in accordance with the defendant's motion for discovery and thereafter in admitting oral testimony and documentary evidence including photographs and the statement or report of the witness-police officer LEROY SCHNEIDER when the same had not been discovered and the existence of which had been specifically denied by the prosecution."

█ Article 40.09 § 9, Vernon's Ann.C. C.P., provides that the appellate brief "shall set forth separately each ground of

error of which defendant desires to complain on appeal . . . ." It is clear that appellant's grounds of error are multifarious and present nothing for review.

Nevertheless, we have tried to untangle the overlapping grounds of error in order to answer appellant's contentions as best we understand them.

It appears that appellant's motion for discovery was granted in part and denied in part on October 27, 1971. The following day, appellant's counsel met with the district attorney and was allowed to look at the State's file which included photographs, statements of witnesses, offense reports, etc.

On October 31, 1971, the complaining witnesses, who had moved to Missouri, arrived for the trial bringing with them some photographs they had taken shortly after the alleged offense. It was at this time the prosecution first learned of their existence and the next morning appellant's counsel was notified of the fact that such pictures were in the State's possession. Further, when the pictures were introduced, the appellant expressly stated, "No objection." We cannot agree that, under circumstances described, the court erred in the admission of such photographs, which, incidentally, were not brought forward in the record.

Appellant does not point out specifically what other photographs he has reference to, nor call our attention to that portion of the record where they were introduced. Our examination of the record does not reflect the improper admission of any photographs. In fact, most were introduced without objection.

Further, we observe that the offense report of Officer Schneider was not introduced as claimed. It appears to have been used by the witness to refresh his memory and, on cross-examination, was made available to the appellant for cross-examination and possible impeachment. Still further, we do not interpret the

court's order granting discovery so as to compel the pre-trial production of the particular offense report in question. While some question is raised about the offense report being in the State's file when it was examined by appellant's counsel, we observe that Article 39.14, Vernon's Ann.C.C.P., exempts the work product of the prosecution from discovery.

We find no merit in appellant's other contentions.

The judgment is affirmed.