Shirley Richter BENOIT, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 54296–54300.

Court of Criminal Appeals of Texas.

May 25, 1977.

Rehearing Denied June 22, 1977.

States Motion for Rehearing Denied Sept. 21, 1977.

Walter F. Splawn, Austin, for appellant.

Robert O. Smith, Dist. Atty., and Richard E. Banks, Asst. Dist. Atty., Austin, Jim D. Vollers, State's Atty., and David S. McAn-

gus, Asst. State's Atty., Austin, for the State.

### OPINION

ONION, Presiding Judge.

These are appeals from an order revoking probation (# 54,296), two convictions for delivery of codeine (# 54,297 and # 54,-298), a conviction for delivery of pentazocine (# 54,299) and a conviction for delivery of diazepam (# 54,300).

The record reflects that on May 18, 1972 appellant pled guilty to assault with intent to rob and was given five (5) years, probated. One of the conditions of probation was that she "commit no offense against the laws of this or any State or of the United States."

On April 3, 1975 the State filed an amended motion for revocation alleging that she delivered codeine to John Aycock on May 24 and on May 30, 1974, that she had delivered pentazocine to Aycock on May 20, 1974 and that on May 21, 1974 she delivered diazepam. These alleged offenses were also the subject of the indictments herein.

A hearing on the revocation motion was conducted on April 17, 1975, and appellant pled "true" to the allegations in the motion. She also judicially confessed the offenses made the basis of the revocation motion. Her probation was revoked.

On the same date she entered guilty pleas to the indictments charging the offenses described above. In each case she took the witness stand and made a judicial confession. She was assessed five (5) years' imprisonment in each case. Notice of appeal was given in each case.

Appellant complains that indictments in # 54,297 and # 54,298 for delivery of codeine do not allege an offense against the law and are fundamentally defective.

Omitting the formal parts, the indictments charged that on May 24 and May 30, 1974 the appellant did:

"then and there knowingly and intentionally deliver to John Aycock a controlled substance, namely: Codiene (sic) . . . ."

Appellant urges that there is no allegation as to the penalty group within which the alleged codeine falls. Under Article 4476–15, Vernon's Ann.C.S. (Controlled Substances Act), appellant contends that codeine falls within Penalty Group 1, 3 or 4 depending upon the amount of codeine involved, and that delivery of codeine could be either a first degree felony, a third degree felony or a Class A misdemeanor.[1]

Article 4476–15, § 4.02, Vernon's Ann. C.S., establishing criminal penalties, mentions codeine in subsections (b)(3)(A)(viii), (d)(5)(A), (B) and (e)(1). They read as follows:

"(b) Penalty Group 1. Penalty Group 1 shall include the following controlled substances:

"(3) Any of the following substances, except those narcotic drugs listed in another group, however produced:

"(A) Opium and opiate, and any salt, compound, derivative, or preparation of opium or opiate, including the following:

"(viii) *Codeine.*[2] (Emphasis supplied.)

"(d) Penalty Group 3. Penalty Group 3 shall include the following controlled substances:

"(5) Any material, compound, mixture, or preparation containing limited quantities of any of the following narcotic drugs, or any salts thereof:

"(A) not more than 1.8 grams of *codeine*, or any of its salts, per 100 milliliters or not more than 90 milligrams per dosage unit, with an equal or greater quantity of an isoquinoline alkaloid of opium;

"(B) not more than 1.8 grams of *codeine*, or any of its salts, per 100 milliliters or not more than 90 milligrams per

---

1. Appellant also urges that if the offense was a misdemeanor the District Court did not have jurisdiction.

2. In § 4.02(b)(2)(D), (E), supra, codeine methylbromide and codeine-N-Oxide are listed as being in Penalty Group One.

dosage unit, with one or more active, nonnarcotic ingredients in recognized therapeutic amounts." (Emphasis supplied.)

"(e) Penalty Group 4. Penalty Group 4 shall include any compound, mixture, or preparation containing any of the following limited quantities of narcotic drugs, which shall include one or more nonnarcotic active medicinal ingredients in sufficient proportion to confer upon the compound, mixture, or preparation valuable medicinal qualities other than those possessed by the narcotic drug alone:

"(1) not more than 200 milligrams of *codeine* per 100 milliliters or per 100 grams." (Emphasis supplied.)

Punishment for delivery of a Penalty Group 1 substance in § (b) is a first degree felony under the provisions of § 4.03(b)(1). Delivery of a Penalty Group 3 substance in § (d) is a third degree felony under § 4.03(b)(3). Also, delivery of a Penalty Group 4 substance in § (e) is a Class A misdemeanor under § 4.03(b)(4).

§ 4.01(b)(1)(3) of the Controlled Substances Act provides that an individual adjudged guilty of a felony of the first degree shall be punished by confinement in the Texas Department of Corrections for life or for a term of not more than 99 years or less than 5 years, and one guilty of a third degree felony shall be confined in the Department of Corrections for a term of not more than 10 years or less than 2 years, and in addition may be punished by a fine not to exceed $5,000.00. § 4.01(a)(1) provides that a person guilty of a Class A misdemeanor shall be punished by confinement in jail not to exceed one year or a fine not to exceed $2,000.00, or both such fine and imprisonment.

■ It is the intent of Article I, § 10 of the Texas Constitution, Vernon's Ann.St., that the accused in a particular case be given information upon which he may prepare his defense, and this information must come from the face of the indictment. *Wilson v. State*, 520 S.W.2d 377 (Tex.Cr.App. 1975); *Voelkel v. State*, 501 S.W.2d 313 (Tex.Cr.App.1973).

■ It is, of course, not sufficient to say that the accused knew with what offense he was charged, but the inquiry must be whether the charge in writing furnished that information in plain and intelligible language. *Wilson v. State*, supra; *Moore v. State*, 473 S.W.2d 523 (Tex.Cr.App.1971).

■ Further, the rule is that an offense should be charged in plain and intelligible words with such certainty as to enable the accused to know what he will be called upon to defend against and to enable him to plead the judgment that may be given on it in bar of any further prosecution for the same offense. *Wilson v. State*, supra; *Gaines v. State*, 501 S.W.2d 315 (Tex.Cr.App.1973).

This court was faced with a somewhat analogous situation to the one in the present case in *Wilson v. State*, supra. The indictment in *Wilson* alleged that the defendant " 'did then and there knowingly and intentionally deliver to W. D. West a controlled substance, namely: Marihuana. . . .' " We noted that delivery of marihuana could be either a third degree felony under article 4476–15, § 4.05(d), or a Class B misdemeanor if the actor delivered one-fourth ounce or less without receiving remuneration under § 4.05(f), supra. This court held that:

"We conclude that the failure of the indictment in the instant case to allege the amount of marihuana delivered or other allegations of remuneration so as to reflect what punishment was involved, whether the offense is a misdemeanor or felony, or whether the District Court had jurisdiction, renders the indictment fundamentally defective. . . .

"The provision of Subsection (f) of Section 4.05 creating a misdemeanor offense is not such an exemption or exception which need not be negated as contemplated by Section 5.10 of the Controlled Substances Act, so that section does not apply." See also *Mears v. State*, 520 S.W.2d 380 (Tex.Cr.App.1975); *Suarez v. State*, 532 S.W.2d 602 (Tex.Cr.App.1976); *Durham v. State*, 532 S.W.2d 606 (Tex.Cr.App.1976); *Finley v. State*, 528 S.W.2d

854 (Tex.Cr.App.1975); *Saunders v. State*, 528 S.W.2d 843 (Tex.Cr.App.1975); *Tribble v. State*, 525 S.W.2d 29 (Tex.Cr. App.1975).

Reliance was had in the *Wilson* decision upon the case of *Standley v. State*, 517 S.W.2d 538 (Tex.Cr.App.1975). In *Standley* an indictment failed to allege whether the offense of conversion by bailee was under the value of $50, or $50 and over. The effect of not alleging the value was to place the appellant in the position of not having notice as to whether he was being charged with a felony or misdemeanor.

In *Standley* this court stated:

"It is well established that the value of the property must be alleged if it affects penalty. 5 Branch's Ann.P.C., 2d ed., Sec. 2674, p. 120.

"In 30 Tex.Jur.2d, Indictment and Information, Sec. 38, p. 604, it is written:

" 'An indictment or information should allege every fact which may affect the degree or kind of punishment. A prior conviction must be alleged where a higher penalty is sought by reason of such conviction; *the value of property must be stated where it is made the basis of punishment;* and the injury done to the owner of property must be averred where the amount of injury is an essential element in the punishment.' (Emphasis Supplied)

"In *Hawkins v. State*, 383 S.W.2d 416 (Tex.Cr.App.1964), this court said in a prosecution under Article 1429, Sec. 1, Vernon's Ann.P.C.:

" 'Without such an allegation the punishment cannot be determined.' See also *Price v. State*, 165 Tex.Cr.R. 326, 308 S.W.2d 47 (1957), and cases cited.

"It is clear from what has been said that the indictment in the instant case is fundamentally defective for the failure to allege value. The indictment omits a necessary element of the offense attempted to be alleged, does not show whether it was a misdemeanor or felony, and there is no way to determine from the face of the indictment if the District Court of Lippscomb (sic) County had jurisdiction of the offense sought to be alleged. We conclude that the judgment of the conviction based thereupon is void, rather than voidable."

In *Tave v. State*, 546 S.W.2d 317 (Tex.Cr. App.1977), it was held that information charging the offense of driving while license suspended was fatally defective for failing to allege whether the operator's license was suspended under the provisions of Article 6701h (Safety Responsibility Act) or under Article 6687b, § 22(b), providing for suspension of an operator's license for numerous reasons. It was essential that the proper statute be pled because the statutes carried different penalties.

A similar contention was raised by the defendant in *Bailey v. State*, 543 S.W.2d 653 (Tex.Cr.App.1976), where he asserted that the indictment charging him with possession of a controlled substance was defective for failure to state an offense over which the trial court had jurisdiction. His premise was based on the fact that the indictment did not state what penalty group the alleged controlled substance was listed under in § 4.04 of Article 4476–15, supra.

The defendant in *Bailey* was charged with possession of lysergic acid diethylimide, which was only one penalty grade and one punishment. We observed that:

". . . Possession of any amount of this substance is a felony of the second degree. *Our situation is distinguishable from those cases where the amount of the substance possessed by the accused determines whether the offense is a felony or a misdemeanor.* . . ." (Emphasis supplied.)

We noted, "[t]he trial court had jurisdiction over the offense charged in the indictment. The failure of the indictment to specify the penalty group (was) not a defect in (that) case."

■ The present case, unlike *Bailey*, involves a controlled substance included in three separate penalty groups based upon the amount possessed. Further, the three separate punishments provided for delivery

include that of both felony and misdemeanor. The failure to allege in the indictment the amount involved or penalty group[3] so as to reflect what punishment is involved, whether the offense is a misdemeanor or felony, or whether the District Court had jurisdiction renders the indictment fatally defective. Cf. *Wilson v. State*, supra; *Mears v. State*, supra; *Standley v. State*, supra; *Bailey v. State*, supra. Indeed, the trial court was probably even misled by the ambiguity of the possible offense alleged by the indictment for delivery of codeine when he admonished appellant the range of punishment was 2 to 10 years or that of a Penalty Group 3 delivery.

The judgments are reversed and prosecutions ordered dismissed.

■  Next, appellant urges that the indictment charging her with the delivery of diazepam is fundamentally defective since it did not allege an offense against the laws of this State.

Omitting the formal parts, the indictment charged that the appellant on or about May 21, 1974:

".  .  .  did then and there knowingly and intentionally deliver to John Aycock, a dangerous drug, namely: Diazepam, a drug which bears the legend: Caution: Federal Law prohibits dispensing without prescription  .  .  .."

Appellant's argument is that diazepam was not subject to the requirement that it bear the legend: "Caution: Federal Law prohibits dispensing without prescription" until July 2, 1975, and the evidence shows that she delivered the drug in question on May 21, 1974.

Diazepam was not included in Schedules I through V of Article 4476–15, Vernon's Ann.C.S. (Controlled Substances Act), at the time of the alleged offense, so prosecution was under Article 4476–14, Vernon's Ann.C.S. (Dangerous Drugs), which provided in § 2(a) as follows:

"Sec. 2.  For the purposes of this Act:

"(a) The term 'dangerous drug' means any drug or device that is not included in Schedules I through V of the Texas Controlled Substances Act and that is unsafe for self-medication, and includes the following:

"(1) Tranquilizers.

"(2) Procaine, its salts, derivatives, or compounds or mixtures thereof except ointments and creams for topical application containing not more than two and one-half percent (2½%) strength.

"(3) Any drug or device which bears the legend: Caution: federal law prohibits dispensing without prescription, or the legend: Caution: federal law restricts this drug to use by or on the order of a licensed veterinarian.

"(4) Phendimetrazine, its salts, derivatives, or compounds or mixtures thereof.

"(5) Pentazocine, its salts, derivatives, or compounds or mixtures thereof.  .  .  ."

See also Article 4476–15, § 2.17, Vernon's Ann.C.S.[4]

It is obvious from the above that the indictment in question was drafted under § 2(a)(3) of Article 4476–14, supra.

"(1) tranquilizers;

"(2) procaine, its salts, derivatives, or compounds or mixtures thereof;

"(3) any substance that bears the legend: Caution: federal law prohibits dispensing without prescription; or the legend: Caution: federal law restricts this drug to use by or on the order of a licensed veterinarian;

"(4) phendimetrazine, its salts, derivatives, or compounds or mixtures thereof;

"(5) pentazocine, its salts, derivatives, or compounds or mixtures thereof."

3.  It is observed that in Morrison and Blackwell's New Texas Penal Code Forms (Texas Controlled Substances Act), § 4.03, it is recommended that in alleging unlawful delivery of a controlled substance that the penalty group in which the controlled substance alleged falls be pled in the indictment. If that had been done in the instant case the question raised would have been avoided.

4.  "Sec. 2.17.  The following substances are dangerous drugs regulated by the provisions of Chapter 425, Acts of the 56th Legislature, Regular Session, 1959, as amended (Article 726d, Vernon's Texas Penal Code):

Our review of federal law reveals that it was not until July 2, 1975 that diazepam by name could be dispensed by prescription only. 40 Federal Register 23998–24002 (June 4, 1975). Title 21, § 1308.14(7) of the Code of Federal Regulations was thereby amended to include diazepam as a depressant.

The Texas State Department of Health has likewise added diazepam to Schedule IV of the Texas Controlled Substances Act, Article 4476–15, § 2.06, effective July 10, 1975, pursuant to its authority under § 2.09(e) of the Act.

It would thus appear that federal law did not prohibit dispensing without a prescription at the time of the alleged offense.

A similar issue was raised in *Jackson v. State*, 518 S.W.2d 371 (Tex.Cr.App.1975). There Jackson was charged with selling a dangerous drug, to wit: methaqualone. Such drug was not included in one of the classes of substances specified as a dangerous drug in then Article 726d, Vernon's Ann.P.C., and there had to be proof to support the allegations in the indictment that it was "a drug which bears the legend: Caution: federal law prohibits dispensing without a prescription." The alleged offense was shown to have occurred on January 17, 1973, and it was observed in the court's opinion that it was not until October 1, 1973 that federal law provided that methaqualone by name could be dispensed by prescription only.

In *Jackson* this court stated:

"The proper interpretation of this statute is that a drug or device is not a dangerous drug even though it bears the legend 'Caution: Federal law prohibits dispensing without prescription' unless the federal law did provide that that drug or device be dispensed by prescription. Certainly it would not constitute a criminal offense under Article 726d, Section 2(a)(20), V.A.P.C., to dispense a drug or device bearing the legend 'Caution: Federal law prohibits dispensing without prescription' unless the federal law did provide that that drug or device be dispensed only by prescription."

We conclude in the instant case that the indictment did not charge an offense under the laws of Texas.[5] The prosecution in Cause No. 54,300 thus must be dismissed.

In connection with the revocation of probation and the conviction for delivery of pentazocine, appellant raises two grounds of error common to all five appeals.

Appellant urges the court erred in refusing to permit her appellant counsel to develop the testimony of her trial counsel on a hearing on objections to the appellate record. In a related matter appellant contends that the court accepted the "bill of exception" and it reflected the court erred in overruling the motion for continuance.

The sentences were pronounced on April 17, 1975, and notice of appeal was given in each case at the same time. Notice of completion of the record was given on July 16, 1974. On July 17, 1974, appellant filed an unsworn "bill of exception" stating that prior to trial the court had overruled her motion for continuance. In such bill it was stated trial counsel had been forced to obtain a recess in a county court trial in which he was engaged and come to district court, that witnesses who had been subpoenaed were not available at the time, but the court ordered him to trial without witnesses and adequate time to prepare for trial or to locate witnesses, some of whom would testify the appellant had prescriptions for the drugs allegedly delivered. The "bill" further related that counsel discussed the seriousness of the cases with appellant and authorized counsel to plea bargain for her and the five year concurrent sentences followed.

The "bill" was presented on the same date to a district judge other than the judge

5. It does appear that if the State had alleged that diazepam was a dangerous drug because it was a tranquilizer under Article 4476–14, § 2(a)(1), supra, it would have been able to prove the same and obtain a conviction. Diazepam or valium is a tranquilizer. Physicians' Desk Reference, pp. 1337–1340 (28th ed. 1974). See and cf. *Ablon v. State*, 537 S.W.2d 267 (Tex.Cr.App.1976).

who tried the case, who took no action because the trial judge "was out of town" but who extended time for filing the bill until August 11, 1975.

On July 25, 1974 a "Defendant's Objections to Records on Appeal" was filed, and on August 7, 1975 an "Amended Bill of Exception" was filed with the identical contentions as the first "bill."

On August 19, 1975 a hearing on the objections to the appellate record was held. Appellant's trial counsel was called as a witness. When it was attempted to be elicited from him what he was engaged in doing when the instant cases were called for trial, the State's objection that the testimony did not relate to matters or events that occurred during trial was sustained. Roy Wiese, Jr., from the State Department of Public Welfare was then called. It was established through him that the appellant had the various drugs she was accused of delivering by virtue of prescriptions and the Welfare Department had paid for them.

■ It appears that the appellant attempted to use the hearing on the objections to the record to enlarge upon the contentions advanced in the "bills of exceptions" and which were not a part of the record. See Article 40.09, § 4, Vernon's Ann.C.C.P. We find no error in the court's action in sustaining the State's objection to appellant's trial counsel's testimony.

■ As to the related contention, we observe that if the "bills of exceptions" are properly before us the court did not err in overruling the motion for continuance, if one was in fact made. There is no written motion in the record before us and even the "bills" indicate that the motion was not in compliance with Article 29.03, Vernon's Ann.C.C.P. It is well established that where the motion is not in writing and signed and sworn to by the appellant it is not error to overrule such oral motion for continuance. See *Gaines v. State,* 468 S.W.2d 853 (Tex.Cr.App.1971); *Carpenter v. State,* 473 S.W.2d 210 (Tex.Cr.App.1971); *Allen v. State,* 505 S.W.2d 923 (Tex.Cr.App. 1974). See also *Zanders v. State,* 515

S.W.2d 907 (Tex.Cr.App.1974); *Thrush v. State,* 515 S.W.2d 122 (Tex.Cr.App.1974); *Ellard v. State,* 507 S.W.2d 198 (Tex.Cr. App.1974).

■ Further, it is observed that there was no motion for new trial assigning as error the overruling of the motion for continuance. It is well settled that a motion for new trial must be made to preserve complaint of the overruling of a motion for continuance and should have the affidavit of the missing witness or a showing under oath from some source that the witness would actually testify as to the facts set forth in the motion. See *Allen v. State,* supra; *McCloud v. State,* 494 S.W.2d 888 (Tex.Cr.App.1973); *Walker v. State,* 543 S.W.2d 634 (Tex.Cr.App.1976).

■ The witness Wiese testified that appellant had obtained prescriptions for the drugs involved and that the Welfare Department paid for them. This testimony was before the court by virtue of appellant's own testimony and was undisputed. Wiese's testimony would not only have been cumulative but immaterial. The Controlled Substances Act only makes possession of controlled substances lawful where obtained by a prescription. See § 4.04(a). However, an accused's unlawful delivery of a controlled substance is not made lawful because she had originally obtained such substance by virtue of a prescription. See § 4.03(a).

Next, appellant complains that she was denied effective assistance of counsel under the due process clause of the Fourteenth Amendment.

■ Any claim of ineffective assistance of counsel must be determined upon the particular circumstances of each individual case. *Ex parte Prior,* 540 S.W.2d 723 (Tex. Cr.App.1976); *Ex parte Gallegos,* 511 S.W.2d 510 (Tex.Cr.App.1974).

■ The adequacy of an attorney's services must be gauged by the totality of the representation, *Williams v. State,* 513 S.W.2d 54 (Tex.Cr.App.1974); *Coble v. State,* 501 S.W.2d 344 (Tex.Cr.App.1973), and the allegations of ineffective represen-

tations will be sustained only if they are firmly founded. *Faz v. State*, 510 S.W.2d 922 (Tex.Cr.App.1974); *Long v. State*, 502 S.W.2d 139 (Tex.Cr.App.1973).

It must be remembered that the constitutional right to counsel, whether counsel be appointed or retained, does not mean errorless counsel, and counsel is not to be judged ineffective by hindsight. *Ex parte Prior*, supra; *Duran v. State*, 505 S.W.2d 863 (Tex.Cr.App.1974); *Pete v. State*, 501 S.W.2d 683 (Tex.Cr.App.1973).

An attorney must apprise a case and do the best he can with the facts, and the fact that other counsel might have tried the case differently does not show inadequate representation. *Ex parte Prior*, supra; *Rockwood v. State*, 524 S.W.2d 292 (Tex.Cr.App.1975).

Where counsel is retained, as here, the test is whether the misconduct of counsel, if any, amounts to a breach of a legal duty. See *Ex parte Raley*, 528 S.W.2d 257 (Tex.Cr.App.1975), and cases there cited. *Steel v. State*, 453 S.W.2d 486 (Tex.Cr.App. 1970).

Here, appellant could have received two life sentences, two ten year sentences as well as a five year sentence upon revocation of probation. Counsel was able to extract a plea bargain from the State so that the appellant received five concurrent five year sentences.

In *Bullard v. State*, 548 S.W.2d 13 (Tex. Cr.App.1977), it was held that an allegation of ineffective assistance of counsel may not be founded solely on the fact that appellant pled guilty on the advice of counsel, particularly where the advice of counsel was sound under the circumstances and penalty assessed.

It is noted that three of the indictments have been held fatally defective. Does this render appellant's counsel ineffective? These defects were clearly not evident upon the face of the indictments. Further, the State could have easily re-indicted for delivery of diazepam alleging that it was a tranquilizer and the plea bargain may then have been no longer available. The question of the defective nature of the indictments for delivery of codeine is one of first impression for this court with no past definitive precedent. Even if counsel had advanced the argument that the indictments were defective on the grounds assigned in these appeals, the State could have re-indicted correcting the defects. Counsel may well have considered this factor when he evaluated appellant's situation and determined to accept the plea bargain of five concurrent five years. This may have been the wiser course than facing the uncertainty of three re-indictments and the punishments that could then be inflicted.

In viewing all of the circumstances, we cannot conclude there has been a breach of legal duty. See *Trotter v. State*, 471 S.W.2d 822 (Tex.Cr.App.1971). Even if we used the "reasonably effective assistance" standard of *Ex parte Gallegos*, supra, applied to appointed counsel, we would reach the same result. We cannot conclude that appellant has been deprived of due process of law.

Lastly, appellant contends the trial court erred in holding that she violated probationary condition No. 3 because applied to the instant facts such probationary condition is unconstitutionally overbroad. Condition No. 3 was that she "avoid injurious or vicious habits (including the use of narcotics or habit forming drugs and alcoholic beverages).

It is observed that the amended revocation motion alleged that appellant violated not only condition No. 3 but also probationary condition No. 2 that she "commit no offense against the laws of this or any other State or of the United States."

It is observed that in the written order revoking probation the court revoked solely upon violation of condition No. 2. Therefore, we do not reach the contention advanced by the appellant.

It is observed that at the hearing on the motion to revoke probation the appellant entered a plea of "true," which standing alone is sufficient to support a

revocation of probation. *Mitchell v. State*, 482 S.W.2d 221 (Tex.Cr.App.1972); *Guillot v. State*, 543 S.W.2d 650 (Tex.Cr.App.1976). Further, the appellant took the witness stand and made a judicial confession to all the allegations in the revocation motion. While three of the indictments have been held defective, we need not determine what effect such holdings would have on the revocation because the judicial confession to the delivery of pentazocine would afford a sufficient basis for revocation since a revocation order can be supported by proof of one violation alone. See *Ross v. State*, 523 S.W.2d 402 (Tex.Cr.App.1975); *Gobell v. State*, 528 S.W.2d 223 (Tex.Cr.App.1975).

The judgments in Causes # 54,297 and # 54,298 (involving the delivery of codeine) and the judgment in Cause # 54,300 (delivery of diazepam) are reversed and prosecutions under the indictments therein ordered dismissed. The judgments in Causes # 54,296 and # 54,299 are affirmed.

## ON STATE'S MOTION FOR REHEARING

DOUGLAS, Justice, dissenting.

The State's motion for rehearing has been overruled without written opinion. We originally held that the allegation in two indictments that Shirley Benoit possessed codeine was insufficient to allege a felony offense. We should conclude that the indictments allege a felony.

The Controlled Substances Act specifically provides that a person commits a felony of the first degree if he knowingly or intentionally delivers a controlled substance listed in Penalty Group 1 (Section 4.03). Penalty Group 1 lists codeine [Section 4.02(b)(3)(viii)].

*Wilson v. State*, 520 S.W.2d 377 (Tex.Cr.App.1975), is not in point because that indictment charged the delivery of marihuana and the Controlled Substances Act does not make it a felony to deliver marihuana. The same Act does make it a felony to deliver codeine.

Sections (d), (e) and (f) of the Texas Controlled Substances Act, Article 4476–15, Sec. 4.05, V.A.C.S., provide:

"(d) Except as otherwise provided by this Act, a person commits an offense if he knowingly or intentionally delivers marihuana.

"(e) Except as provided in Subsection (f) of this section, an offense under Subsection (d) of this section is a felony of the third degree.

"(f) An offense under Subsection (d) is a Class B misdemeanor if the actor delivers one-fourth ounce or less without receiving remuneration."

From our past decisions, to allege a felony for the delivery of marihuana the indictment or information must allege that the amount delivered was more than one-fourth of an ounce or that it was delivered for remuneration.

In *Suarez v. State*, 532 S.W.2d 602 (Tex.Cr.App.1976), the indictment alleged the delivery of marihuana. This Court held that it alleged a misdemeanor offense even though the amount was not mentioned and that the court had jurisdiction to try the case.

The provisions of the controlled Substances Act in this case concerning the delivery of codeine are not like provisions of marihuana. To allege a felony offense for the possession of marihuana the indictment or information must under the present code recite that more than four ounces were possessed.

The Act makes the delivery of codeine a felony without regard to the amount or if it was with remuneration. There are some lesser offenses where there is a mixture of a small amount of codeine with other substances. These would be misdemeanors.

In order for the offense alleged to be within the definition of substances in Penalty Group 3 there is a requirement that the codeine be in a compound mixture or preparation containing a limited mixture of codeine with an equal or greater quantity of isoquinoline alkaloid of opium or non-narcotic ingredients in recognized therapeutic amounts. To be within Penalty Group 4 the codeine must be in a compound mixture

or preparation containing one or more non-narcotic active medicinal ingredients in sufficient portion to confer valuable medicinal qualities upon the compound and be in a limited physical quantity.

These other penalty group compounds containing codeine do not contain codeine alone but prohibit a combination of ingredients including codeine. It would appear that the allegation of codeine brings it within the provisions of a Penalty Group 1 offense and the *proof* that the codeine was in a limited quantity in the mixture or compound prohibited by other penalty groups would simply raise the issue of whether or not there was a lesser penalty or a lesser included offense involved in the prosecution.

To uphold appellant's contention that the indictment is fundamentally defective, a pleader would have to allege the delivery of codeine which was not mixed with other substances named in the act or allege a specific amount of codeine not required by the statute or he would have to allege more than the amounts that are mixed with other substances to constitute a misdemeanor offense.

There is no requirement that an indictment allege in an assault with intent to murder case that the offense was not a simple assault. Proof of a simple assault only does not oust the district court of jurisdiction. In such a case the judge submits the cause to the jury on simple assault.

In the delivery of a codeine case, if the proof shows a mixture of compounds with codeine as set out in the statute to be misdemeanor offenses, the judge may submit the case upon or give an instruction in regard to a lesser included offense.

Under the former penal code the possession or delivery of marihuana or heroin was a felony offense regardless of the amount involved. In *Pelham v. State,* 164 Tex.Cr.R. 226, 298 S.W.2d 171 (1957), the Court held that a very small amount of marihuana was insufficient to support the conviction. The Court held:

". . . to constitute the unlawful act of possessing marijuana, there must be possessed an amount sufficient to be applied to the use commonly made thereof. In other words, unless the amount of marijuana possessed is such as is capable of being applied to the use commonly made thereof, it does not constitute marijuana within the meaning of the statute."

*Greer v. State,* 163 Tex.Cr.R. 377, 292 S.W.2d 122, (1956), held that a trace of heroin on a moist piece of cotton was insufficient to warrant conviction for possessing heroin.

After these holdings, this Court did not, under the former code, require the pleader to allege that the accused possessed a narcotic in an amount sufficient to be applied to the use commonly made thereof. In other words, there was no requirement then that a usable amount be alleged. All that was necessary was that the possession of a narcotic be alleged. If a usable amount was not proved, the evidence was insufficient to support a conviction. If appellant's contention be correct, then a usable amount should have been alleged in narcotic cases or the indictment would not show jurisdiction.

As in the present case, if the delivery of codeine is alleged, this is sufficient. If the proof does not show the possession of codeine, the evidence is insufficient. If the proof shows a smaller amount of codeine compounded with other substances under the Controlled Substances Act, then a lesser offense could be submitted to the jury. This, like the *Pelham* case, concerns the proof not the pleading. See *Suarez v. State,* supra.

The State's motion for rehearing should be granted in Causes Nos. 54,297 and 54,298 and the judgments should be affirmed.