**Debbie Ruth MILO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09 83 036 CR.**

Court of Appeals of Texas, Beaumont.

Oct. 12, 1983.

As Corrected Oct. 13, 1983.

Patrice McDonald, The Woodlands, for appellant.

James H. Keeshan, Dist. Atty., Conroe, for appellee.

## OPINION

BROOKSHIRE, Justice.

Debbie Ruth Milo appeals from probation revocation where the period of probation was reduced and sentence assessed at five years. Order was entered granting bond pending appeal.

Appellant asserts that there was a material and fatal variance between ownership alleged in the motion to revoke probation and ownership proved. Appellant also contends the trial court abused its discretion in revoking probation because grounds for revoking was not established by evidence.

At probation revocation proceedings, Randy Lucas testified that on June 30, 1982, he was employed in a managerial capacity at Brookshire Brothers Store in Conroe. On the occasion in question, he saw Appellant and several other women enter the store. He saw the women shoplifting goods. He saw Appellant standing next to one side of the drug aisle putting goods in her purse—a large shoulder bag. A woman accompanying Appellant was putting cigarettes in a smaller bag. Another woman was watching the end of the aisles. The women went to the meat counter and then to the checkout counter. Lucas called the police. He had an employee of the store wait outside for the cops.

When police arrived, the patrol car parked behind the automobile used by the women, Lucas said. The woman who had earlier been watching the aisles went outside and, apparently seeing the patrol car, came back into the store and said something to her companions. The women went over to the pay-telephone, and then back down the drug aisle. Lucas was right behind them. Appellant started throwing stuff out of her purse. Lucas asked Appellant to stop and come to the back of the store, but she did not stop. She went through the checkstand and then out the door. Lucas summoned the waiting police.

At the time of this incident, James Steele, Lucas' superior at the store, was at lunch and Lucas was in charge. Lucas was under supervision of Steele. Lucas did not give consent to Appellant to remove the items from the store without paying. Lucas also, from personal knowledge, knew that Steele did not give Appellant consent to remove items from the store without paying. The items removed were cosmetics and hair-care products.

Conroe policeman Steven Scott Spiller testified that on June 30, 1982, he was dispatched to the Brookshire Brothers Store in Conroe in reference to a shoplifting call. He said that when he arrived at the store, one of the store sackers came out and said shoplifters had not yet left the store. Spiller said he pulled around the corner and waited for several minutes. He saw three women coming out of the store with store employees right behind them. The women were walking eastward from the front of the store toward their vehicle and Spiller got out of his car and said to Appellant, "Excuse me, ma'am." Appellant threw down her purse, kicked off her shoes and

ran. Spiller chased Appellant across the front of the store, back north across the back side of the parking lot. While chasing Appellant he hollered repeatedly for her to stop. He caught her at the back end of the parking lot and placed her under arrest. At that moment, Appellant exclaimed to the officer: "I didn't know that a fat boy could run that fast." On that day, Spiller was dressed in his police uniform. It took several minutes to get handcuffs on Appellant because Appellant was resisting. Inside of Appellant's abandoned purse were cosmetics and hair care products (valued at $41.16).

We find there was no fatal variance between the ownership alleged in the motion to revoke probation and the proof at hearing. The motion to revoke said:

"I.

"Defendant violated condition 'a' of the terms of her probation in that on or about the 30th day of June A.D. 1982 in Montgomery County, Texas she did then and there unlawfully appropriate property, to-wit: cigarettes, cosmetics and hair car[e] products of the value of $41.16 without the effective consent of the owner, *James Steele* and with intent to deprive the said owner of said property." (emphasis added)

Where a large entity is involved, cases of "without effective consent" come up frequently and often with some vexation. *See Simpson v. State,* 648 S.W.2d 1 (Tex.Cr.App.1983). We think the facts in this case are different than those in *Simpson, supra.* In that case, there was no testimony that the "owner" named in the indictment had greater right to possession than appellant. Here, Steele's capacity was explained and showed, on its face, a greater right of possession in the goods. It was also shown, from personal knowledge, that Steele did not give Appellant consent to take the goods. Here the evidence, direct and circumstantial, supports the finding that the people who had care, custody and control of the property did not part with the same voluntarily or by consent. *Daigle*

*v. State,* 658 S.W.2d 774 (Tex.App.—Beaumont 1983). Further, we agree with the State that allegations in a motion to revoke probation need not be in the same precise terms as would be necessary in an indictment and that it is sufficient that a violation of law be alleged and fair notice be given probationer. *Bradley v. State,* 608 S.W.2d 652, at 655 (Tex.Cr.App.1980). We think that the instant Motion to Revoke sufficiently alleged a violation of law and gave fair notice.

Able counsel for Appellant was very diligent at trial on portions of the Motion to Revoke concerning failure of Appellant to make probation fee payments and fine payments. It was advanced: (1.) Appellant's prior job had paid only $60.00 every two weeks. (2.) Appellant had recently lost her job. (3.) Appellant had two small children. (4.) Appellant was unmarried. (5.) Appellant was pregnant at time of alleged violations. (6.) Appellant suffered the death of one of her children. (7.) Appellant was presently ill. (8.) Appellant had sought employment. Complaint is also made as to how the failure to pay was shown.

There were, however, other bases for revocation. After reviewing the record we cannot hold that the trial court abused discretion in revoking probation. In appeal from order revoking probation, the only issue before the intermediate court is whether the trial court abused its discretion. *Pitts v. State,* 442 S.W.2d 389 (Tex.Cr.App. 1969). The trial judge is the sole trier and finder of facts, the credibility of witnesses and weight to be given to their testimony. *Ross v. State,* 523 S.W.2d 402 (Tex.Cr.App. 1975). The trial judge alone had the ability and opportunity to weigh and observe the witnesses' demeanor, the behavior of Appellant before him, the tenor of evidence— whether it rang true or false. Also, burden of the State is by a preponderance of the evidence. *Scamardo v. State,* 517 S.W.2d 293 (Tex.Cr.App.1974).

Without detailing again the various facts before the trial judge, we think the evidence and testimony of the several witness-

es permitted the trial judge to find that the allegations of theft, contained in paragraph I of the Motion to Revoke, were true. There was also substantial evidence of flight and other actions and acts, taken by Appellant, herself, which could have lead the trial court to believe and find and hold, well within his prerogative, that the probation period should be terminated and the Motion to Revoke Probation be granted.

Grounds of Error numbers Three and Four are overruled.

In Grounds of Error numbers One and Two Appellant claims the original indictment was fundamentally defective in that it erroneously charged a third-degree felony and that the probated sentence was based on a plea of guilty entered without proper admonition and without sufficient jury trial waiver.

The original indictment charged Appellant with knowingly and intentionally delivering to Mark Bousquet a controlled substance, phencyclidine.

Pleading guilty to the indictment, Ms. Milo entered into a stipulation of evidence properly reduced to writing and sworn to and subscribed in open court. As a part of the stipulation, Ms. Milo swore:

"I stipulate and admit that I am the identical person named in the indictment in the above styled and numbered cause and that all the acts and allegations in said indictment are true and correct and that the acts therein occurred in Montgomery County, Texas.

"I stipulate and admit that on or about the 3rd day of March, 1980 in Montgomery County, Texas I did then and there knowingly and intentionally deliver to Mark Bousquet a controlled substance, to-wit: Phencyclidine."

The court found Ms. Milo guilty of the offense on the record made before it and placed the Appellant on probation for ten (10) years upon the usual terms and conditions of probation. A copy of the judgment of the court and the order allowing probation, containing all the terms and conditions of the probation were acknowledged to have been received by Ms. Milo.

Appellant urges that the original indictment was fundamentally defective in that it improperly and erroneously charged a felony of the third-degree. The charging part of the indictment commenced:

"IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:" It alleged that Ms. Milo, on March 3rd, 1980, in Montgomery County, knowingly and intentionally delivered a controlled substance, phencyclidine, "against the peace and dignity of the State". Nothing therein is said about a third-degree felony.

It is correct, as Appellant points out, that *above* the formal charging part of the indictment the charge, "Delivery of a Controlled Substance" is followed by: ". . . Fel. 3 [degree symbol]". On the hearing on the original indictment the Appellant was given an admonishment by the court that if a plea of guilty was entered then the court would probably find the Appellant guilty and assess the punishment at two (2) to ten (10) years in the Texas Department of Corrections and also assess a fine of up to Five Thousand and No/100 ($5,000.00) Dollars.

The court then ordered a ten (10) year probated sentence and charged a Two Hundred Fifty and No/100 ($250.00) Dollar fine.[1]

■ The notation on the indictment form of ". . . Fel. 3 [degree symbol]" and the admonishment of punishment by the trial court were clearly erroneous because during the relevant period, delivery of the controlled substance in question was a first degree felony, NOT third degree.[2]

1. Among the relevant terms and conditions of the probation were that the Appellant would: commit no offense against the laws of the State of Texas; pay a probation fee of Fifteen and No/100 ($15.00) Dollars per month; pay a fine in the amount of Two Hundred Fifty and

No/100 ($250.00) Dollars at the rate of Twenty-five and No/100 ($25.00) Dollars per month.

2. By statute, effective September 1, 1975, to August 26, 1979, phencyclidine (for the purpose of establishing criminal penalties) was classified as a Penalty Group Three (3) controlled

Appellant relies on *Ellerbee v. State,* 631 S.W.2d 480 (Tex.Cr.App.1982) and *Benoit v. State,* 561 S.W.2d 810 (Tex.Cr.App.1977). We think the instant case before us is in a different legal posture.[3]

In *Benoit v. State, supra,* at page 814, the court writes:

"The present case ... involves a controlled substance included in three separate penalty groups based upon the substance. TEX.REV.CIV.STAT.ANN. art. 4476–15, Sec. 4.02(d)(3)(G) (Vernon 1976) governs Phencyclidine. TEX.REV.CIV.STAT.ANN. art. 4476–15, Sec. 4.03(b)(3) provided that the delivery of a controlled substance in Group 3 constituted a felony of the third degree. And by TEX.REV.CIV.STAT.ANN. art. 4476–15, Sec. 4.01(b)(3) felonies of the third degree have a range of punishment by confinement in the Texas Department of Corrections for not more than ten (10) or less than two (2) years and a possible additional punishment by a fine not to exceed Five Thousand and No/100 ($5,000.00) Dollars. TEX.REV.CIV.STAT.ANN. art. 4476–15, Sec. 4.02, (b) to (e) was amended by Acts 1979, 66th Leg., page 1286, chapter 598, Sec. 6, effective August 27, 1979, (Vernon Supp.1982–1983). Hence, after August 27, 1979, phencyclidine was reclassified and listed under Penalty Group 1, 1, TEX.REV.CIV.STAT.ANN. art. 4476–15, Sec. 4.02(b)(10) (Vernon Supp.1982–1983). Felonies of the first degree had a range of punishment by confinement for life or for a term of not more than ninety-nine (99) years or less than five (5) years. TEX.REV.CIV.STAT. ANN. art. 4476–15, Sec. 4.01(b)(1) (Vernon Supp.1982–1983). Felonies of the first degree were not amended, however, until the Acts of 1981, 67th Leg. page 699, chapter 268, Sec. 5, effective September 1, 1981, TEX.REV.CIV. STAT.ANN. art. 4476–15, Sec. 4.04 (Vernon Supp.1982–1983). It must be borne in mind that the alleged delivery date of the phencyclidine was "on or about the 3rd day of March A.D. 1980". At that time, the statute provided that the delivery of this controlled substance was a felony and that this controlled substance fell within Penalty Group 1—a first degree felony—as shown by the statutes and various amendments thereto.

3. In *Benoit v. State, supra,* the main gravamen of the case involved codeine and the alleged date of the offense involving codeine was April 3, 1975. On that controlling date (April 3, 1975), TEX.REV.CIV.STAT.ANN. art. 4476–15, Sec. 4.02 (Vernon 1976), establishing certain criminal penalties, mentions codeine in three different subsections, namely: (b)(3)(A)(viii), being classified as Penalty Group 1, (d)(5)(A), (B), Penalty Group 3, in turn, is resubdivided into amounts of not more than 1.8 grams of

amount possessed. Further, the three separate punishments provided include that of both felony and misdemeanor. The failure to allege in the indictment the amount involved or penalty group so as to reflect what punishment is involved, whether the offense is a misdemeanor or felony, or whether the District Court had jurisdiction renders the indictment fatally defective." [citing cases]

codeine with a quantity of isoquinoline alkaloid of opium on the one hand and not more than 1.8 grams of codeine with active, nonnarcotic ingredients in recognized therapeutic amounts on the other governed by (e)(1) Penalty Group 4. In that complex and somewhat convoluted statutory labyrinth the punishments were different. Punishment for delivery of a Penalty Group 1 substance was a first degree felony. Delivery of a Penalty Group 3 substance was a third degree felony. However, delivery of a Penalty Group 4 substance was a Class A misdemeanor. Moreover, at the relevant times in the case of *Benoit v. State, supra,* at page 813, it states:

"Sec. 4.01(b)(1)(3) of the Controlled Substances Act provides that an individual adjudged guilty of a felony of the first degree shall be punished by confinement in the Texas Department of Corrections for life or for a term of not more than 99 years or less than 5 years, and one guilty of a third degree felony shall be confined in the Department of Corrections for a term of not more than 10 years or less than 2 years, and in addition may be punished by a fine not to exceed $5,000.00."

Contemporaneously, *Sec. 4.01(a)(1)* provided that an individual defendant guilty of a Class A misdemeanor shall be punished by confinement in jail not to exceed one year; or a fine up to $2,000.00, or both. Under this statutory backdrop, the Court of Criminal Appeals held that an indictment that did not set out the separate penalty group and the proper penalty group was a fatally defective indictment. This was true, the court wrote, because the failure to allege in the indictment the amount involved, being codeine, or the penalty group, so as to reflect what punishment was involved; coupled with the defect of failing to allege whether the offense is a misdemeanor or felony or whether the district court had jurisdiction cumultively rendered the indictment fatally defective. In the instant case, we simply do not have either the factual morass or the statutory labyrinth involved. The *Benoit v. State, supra,* case is not controlling or parallel nor forcefully persuasive. These distinctions were set out and discussed in *Ellerbee v. State, supra,* which involves the controlled substance Tetrahydrocannabinol.

To summarize, then, the indictment in the *Benoit v. State, supra,* case was fatally defective on four (4) basic grounds: (A) a controlled substance included in three (3) separate penalty groups, based on the amount possessed; (B) three (3) separate punishments provided for at the delivery; (C) that included both felony and misdemeanor offenses; (D) whether the district court had jurisdiction.

The instant case, because of the date of the offense involved and the then statutory scheme, had none of these basic defects. *Kasper v. State,* 547 S.W.2d 633 (Tex.Cr. App.1977) urged by the Appellant is not controlling because, there, a conviction involved burglary when the basic original indictment charged burglary of a private residence at night, being a violation of a former penal code.

Also, in *Kasper v. State, supra,* the minimum punishment for the offense charged in the indictment, being burglary of a private residence at nighttime, was imprisonment for five (5) years. Again, in *Kasper v. State, supra,* the trial judge, upon revocation, assessed punishment at three (3) years confinement. Hence, in the *Kasper v. State, supra,* case the number of years of punishment was totally inconsistent with the minimum confinement punishment as set out in the then controlling statute.

In *Timms v. State,* 542 S.W.2d 424 (Tex. Cr.App.1976) it was benignly held that an indictment which totally fails to allege that an offense was committed by the accused is insufficient to support a conviction. And it follows that a conviction which is based on an indictment which fails to state an offense against the law is void. *Timms, supra,* is different from the instant case. In *Timms, supra,* the indictment did not allege that the offense of criminal mischief was committed "without the effective consent of the owner" which was held to be an essential element of that offense; and, hence, the revocation of probation was reversed and the prosecution ordered dismissed because of a fundamentally defective indictment.

■ Moreover, TEX.CODE CRIM.PROC. ANN. art. 21.02, 1, provides and requires that the indictment shall commence "In the name and by authority of The State of Texas". Hence, wording set out before the commencing of the indictment, itself, does not constitute or form a part of the indictment and is certainly not a formal part of the charging instrument or pleading. *Article 21.02* sets out the necessary elements of an indictment and the prerequisites concerning the sufficiency of the indictment. The indictment pleading in the instant case, we find, meets these standards. The indictment in question, likewise, complies with *TEX.CONST.* art. *I, Sec. 10* (1876) in that the accused in a particular case be given information upon which he may prepare his defense and that this information is required to be set forth on the face of the indictment. *Wilson v. State,* 520 S.W.2d 377 (Tex.Cr.App.1975); *Voelkel v. State,* 501 S.W.2d 313 (Tex.Cr.App.1973). Here, the charging part of the indictment sets forth information and the elements of the offense in plain and intelligible language. *Moore v. State,* 532 S.W.2d 333, (Tex.Cr. App.1976).

There can be no doubt that the instant offense and indictment is written in such plain and intelligible words and with such certainty as to enable the accused to fully understand what she will be called upon to defend against and to enable her to plead the judgment that may be given on it in bar of any further prosecution for the same offense. *Wilson v. State, supra; Gaines v. State,* 501 S.W.2d 315 (Tex.Cr.App.1973).

■ The mistake made in the original proceedings was that Appellant was advised as to the wrong range of punishment; being, in general, not less than two (2) nor more than five (5) years, plus a possibility of a fine up to Five Thousand and No/100 ($5,000.00) Dollars. The correct range of punishment was for life or for a term of years not less than five (5) nor more than ninety-nine (99). This, we hold, was not a jurisdictional defect and we rule that this incorrect admonition as to the range of punishment did not cause the indictment to be fatally defective or create a jurisdiction-

al defect. Nor did it defeat the jurisdiction of the district court. Since the indictment was not fundamentally defective and contained no jurisdictional defects, Ground of Error One is overruled.

 Appellant's Ground of Error Two advances that the trial court erred in revoking the probated sentence which was based upon a plea of guilty entered without proper admonition and without the waiver of a jury trial. The record has been supplemented to show a proper written waiver of a jury trial and, hence, that portion of the second assigned error is, we think, moot.

Concerning other portions of Ground of Error number Two, it is now well established that where no admonition, concerning the range of punishment, was set forth as required by TEX.CODE CRIM. PROC.ANN. art. 26.13(a)(1) (Vernon Supp. 1982–1983), then fundamental error is considered to have been committed without regard to whether a defendant is harmed. *Whitten v. State,* 587 S.W.2d 156 (Tex.Cr. App.1979). But where the record shows, as our record does here, that an admonition was given as to the range of punishment, although it was erroneous, substantial compliance will be deemed to have occurred and thereafter the burden shifts to the accused to show that she entered her plea without understanding the consequences of such plea and was thus harmed. *Ex Parte Mc-Atee,* 599 S.W.2d 335 (Tex.Cr.App.1980). *See also DeVary v. State,* 615 S.W.2d 739 (Tex.Cr.App.1981). In *DeVary, supra,* depite a zealous and aggressive dissent, the court majority held that a plea made under such an erroneous admonition (and we hold under our record here) constituted a prima facie demonstration of a knowing and voluntary plea. We think this is correct, under our record, in view of the additional stipulation of evidence referred to above.

Thus, with substantial compliance demonstrated, the burden shifts to the Appellant to show that she was misled or harmed by the faulty admonition. In view of the entire record before us and in view of the fact that, upon revocation, this Appellant received the minimum five (5) year sentence allowed by law, we hold that this Appellant has failed to show harm.

Grounds of Error numbers One and Two are overruled.

AFFIRMED.

