**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00511-CR**
_____

**LARAY MALONE JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-08-08899 CR**

**MEMORANDUM TO CLERK**

You are directed to make the following corrections in the Opinion dated June 26, 2013:

On page 11, in the first line, change the phrase "Stoddard also testified that she is a clinical psychologist, and she" to read "Clinical psychologist Paul Hamilton testified that he". On the same page, in the same paragraph, change the two references of the name "Stoddard" to "Hamilton".

1

On page 11, in the second line of the second paragraph, change "Stoddard's" to "Hamilton's".

You will give notice of these corrections of the original opinion by sending a copy of corrected page 11, accompanied by this memorandum, to all interested parties who received a copy of the original opinion.

Entered this the 1st day of July, 2013.

PER CURIAM

In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00511-CR
_____

LARAY MALONE JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 12-08-08899 CR

## OPINION

A jury convicted appellant Laray Malone Jr. as a habitual felony offender of violating a civil commitment order and assessed punishment at confinement for life. *See* Tex. Health & Safety Code Ann. § 841.085 (West 2010). In three issues, Malone contends (1) the trial court admitted evidence in violation of the rule in *Old Chief*, (2) his right to a fair trial was violated by language in the jury charge, and (3) evidence admitted in violation of the Sixth Amendment requires reversal or acquittal. We affirm the trial court's judgment of conviction.

1

## BACKGROUND

Myra Stoddard, a former employee of the Office of Violent Sexual Offender Management ("OVSOM"), testified that she served OVSOM as case manager for the Travis County area, and one of her chief responsibilities was supervising individuals who had been civilly committed as sexually violent predators. In 2010, Stoddard was assigned to supervise Malone, and she met with Malone to review the judgment, order of commitment, and all of the supervision rules and agreements concerning his treatment activities. According to Stoddard, item number four of the commitment order required Malone to "exactingly participate in and comply with the specific course of treatment by the Council and [to] comply with all written requirements of the Council and case manager."

Stoddard explained that Malone had also signed the supervision requirements, indicating that he understood the requirements as they had been read and explained to him. In addition, Stoddard explained that she read the Treatment Behavior Contract Requirements to Malone on February 26, 2010, but he refused to sign it. Stoddard testified that condition thirty-eight of the Treatment Behavior Contract Requirements required Malone to cooperate with authority figures, including the treatment provider and supervising officer. According to Stoddard, she also reviewed the Agreement Regarding Therapeutic Activities with Malone

2

and read the document to him, but Malone refused to sign the document. Stoddard explained that the Agreement Regarding Therapeutic Activities required Malone to follow the rules of his treatment provider, and stated that if Malone did not follow the rules of civil commitment, including supervision and treatment, he might be discharged from the treatment program. According to Stoddard, when Malone refused to sign the documents, he told her he was not going to participate in the civil commitment program. Malone was convicted of violating the order of civil commitment in Travis County on February 26, 2010, and he received a sentence of two years of confinement pursuant to the trial court's judgment, which was signed on August 23, 2010.

When Stoddard received notice that Malone was to be discharged from prison on March 1, 2012, she coordinated with the Texas Department of Criminal Justice ("TDCJ") to provide transportation for Malone upon his discharge. According to Stoddard, the transport officer, Wesley Warner, was to contact TDCJ to pick Malone up and transport Malone to the halfway house on March 1. Stoddard explained that after she learned that the transportation she arranged for Malone was unsuccessful, she notified the program specialist, and a warrant was requested for Malone to be arrested for noncompliance.

Captain Kenneth Simmons of TDCJ testified that on March 1, 2012, he was assigned to the Walls unit in Huntsville, and his responsibilities included coordinating discharged or released inmates. Simmons explained that inmates who are being released but have been civilly committed require special instructions and dispositions upon their release, including transportation to a halfway house facility. Simmons coordinated Malone's release with Warner. Simmons testified that he informed Malone that Warner was there to transport him, and that Malone immediately said, "I'm not accepting any civil commitment. I'm not being transported anywhere. I'm discharging." According to Simmons, Malone said, "I'm not going with anybody unless a uniformed deputy shows up." Simmons explained that when Warner told Malone that Warner was there to transport Malone, Malone said "I'm not going." Simmons testified that deputies from the Montgomery County Sheriff's Department arrived and took Malone into custody.

Warner, a retired employee of TDCJ, testified that he contracted with OVSOM to serve as a transport driver for the civil commitment program for sexually violent predators and was under contract with OVSOM to transport civilly committed individuals. Warner received notice that he was to transport Malone to a halfway house in Travis County on March 1. Warner explained that when he arrived at the Walls unit and asked Malone if he was ready to go, Malone calmly

said, "I'm not going." Warner testified that because he is not a commissioned peace officer, he could not use restraints or force Malone to go, so Warner departed from the Walls unit without Malone.

Malone filed a pre-trial motion to suppress, in which he alleged that OVSOM violated his rights under the Sixth Amendment by questioning him without his attorney present and after he had invoked his right to counsel. After conducting a hearing on Malone's motion, the trial court overruled the motion and allowed MacNair to testify at trial.

Barbara MacNair of OVSOM testified that she was assigned to supervise Malone while Malone was incarcerated. MacNair explained that because she was required to give Malone reporting instructions in case he was released from jail so that he would know to contact her or to go to his halfway house facility, she met with Malone at the Montgomery County jail. Malone's counsel objected to all testimony from MacNair stemming from her interview of Malone at the jail on the grounds that the interview violated Malone's Sixth Amendment right to counsel, and counsel obtained a running objection.

MacNair explained that she uses a form to provide the required reporting instructions. MacNair testified that she read the form to Malone verbatim and signed it, but that Malone refused to sign the form. According to MacNair, she

5

wrote "refused to sign" on the form and dated it. Counsel renewed his objection, contending that the document was "taken in violation of [Malone's] Sixth Amendment right to counsel which he had invoked." The trial court overruled the objection and admitted the form into evidence.

MacNair explained that after Malone refused to sign the form, she filed an addendum to the warrant, in which she alleged that Malone's failure to sign the document violated the agreement regarding therapeutic activity. On cross-examination, MacNair testified that she was aware when she visited Malone that a violation of civil commitment order case was pending against him. MacNair explained that she did not go to the jail to collect evidence against Malone; rather, the purpose of her trip was to provide Malone with reporting instructions.

After MacNair's visit, Malone was re-indicted on August 21, 2012, and paragraph three, which alleged that Malone "violated Requirement #4 of the Agreement Regarding Therapeutic Activity, in that on or about July 18, 2012, defendant refused to sign his reporting instructions[,]" was added to the indictment. The first paragraph of the indictment alleged that Malone "violated Order #4 of the Order of Civil Commitment in that on or about March 1, 2012, defendant refused to be transported to his assigned halfway house for treatment[,]" and the second paragraph alleged that Malone "violated Requirement #38 of the Treatment

Behavior Contract in that on or about March 1, 2012, defendant refused to cooperate with Wesley Warner, an authority figure contracted by the [OVSOM] to transport defendant to his assigned halfway house for treatment[.]"

During the State's closing, the prosecutor began his argument by stating as follows:

> We start with the Judgment and the Order of Commitment. And the reason we start there is very simple: [i]f we had come in here on Monday morning and told you that we were going to prosecute somebody for refusing to get in a car, for refusing to obey some person's orders, or for refusing to sign a piece of paper, you would have looked at me like I was crazy.

The State made no other reference in its closing argument to Malone's refusal to sign the documents. The State focused the majority of its closing argument on Malone's refusal to cooperate with being transferred to the halfway house. During closing argument, defense counsel extensively discussed the charge that stemmed from Malone's refusal to sign a document during MacNair's visit and argued that the jury should not consider the evidence from MacNair:

> The third allegation which was added, you'll notice those allegations were for March 1st. I became counsel in March, represented Mr. Malone for that period. And in July Ms. MacNair went to the jail. And that's the next allegation, that on July 18, 2012, the [d]efendant refused to sign his reporting instructions. And there's a document admitted into evidence where she wrote on the bottom he refused to sign the instructions. And you'll recall I objected at that point. I said that that's a violation of the Sixth Amendment. When I represent somebody, [I] tell them not to speak to anybody about the case; I send

letters to the Sheriff, to the jail, and to the District Attorney's office informing them of my representation and to not send anyone to speak to them. If that's not a violation of the Sixth Amendment, when you get home today take out your Constitution, take your Sharpie and mark out the Sixth Amendment because it means nothing. If that's not a violation one does not exist.

And the Judge, in response to my objection, has given you an instruction, and that's Paragraph VI. And that's an important instruction. That instruction says: "You are instructed that no evidence obtained by an officer or other person" – okay? They're going to get up here and say she was an investigator, she wasn't a deputy, she didn't know, that wasn't her intent, none of that matters. If somebody goes in there and elicits incriminating evidence from somebody represented by counsel it is definitionally . . . a violation of the Sixth Amendment.  Okay? And what the Judge instructs you is no evidence obtained by any other person in violation of any provision of the Constitution of Texas or the United states shall be admitted into evidence against the accused on the trial of any criminal case.

Then it follows: "If you believe or have a reasonable doubt thereof that the evidence in question was obtained in violation of any provision of the Constitution . . . then in such event you will wholly disregard such evidence and not consider it as any evidence whatsoever." I think that you can reach no other conclusion tha[n] it was taken in violation of the Sixth Amendment. That's what you're sworn to uphold, and that's what we're asking you to do in this instance. You may not like it. You may not want to. But . . . if the Sixth Amendment doesn't mean anything to Laray Malone, it means nothing to you, your children, your grandchildren, or anybody else from this day forward. It's up to you to abide by it, and to do so you do not consider any evidence that came from Barbara MacNair.
. . .

The other allegation is the one that I think is the violation of the Sixth Amendment, which I think that you should disregard all the evidence that came from Ms. MacNair because I represented him, instructed him not to talk to anybody about the case, and she visited

8

him in the jail and took information anyway. I don't think any of that evidence is admissible. I think you should totally and wholly disregard it.

But if you do . . . choose to listen to what she says, if you think that the Sixth Amendment doesn't protect him in this instance, what … exactly happened that day? Mr. Malone hasn't spoken to his case manager for two years. Somebody shows up, again, he doesn't know. It's not Myra Stoddard. She's not from the Council. She says: "I'm from OVSOM" and basically says: "Sign this document." Now, the exact thing that he's accused of violating is Rule No. 4 on the Council of Sex Offender Treatment agreement regarding therapeutic activities which says: "I agree to follow the rules the treatment provider makes for me. I agree that if I do not follow the rules of civil commitment, including supervision and treatment, I may be discharged from that treatment program." Again, the treatment provider that he has notice of that's in his commitment order from the Court is the Council on Sex Offender Treatment. He's never heard of OVSOM. It's not his treatment provider that he knows. He's not – there's no way that he intentionally or knowingly refused to follow a written order of his provider.

During its rebuttal, the State initially focused on Malone's refusal to participate in civil commitment in 2010 and Stoddard's testimony. The State then argued that MacNair's testimony provided additional evidence of Malone's intent not to comply with the terms of his commitment, and emphasized that MacNair visited Malone in her capacity as an employee of the agency that was required to supervise Malone for the purpose of informing Malone of the reporting instructions.

9

The jury charge included the following instruction:

> You are instructed that no evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> Therefore, as to the July 18, 2012 allegation only, if you believe or have a reasonable doubt thereof that the evidence in question was obtained in violation of any provision of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, then in such event you will wholly disregard such evidence and not consider it as any evidence whatsoever.

*See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005). The jury found Malone guilty, and trial proceeded to the punishment phase.

Because Malone was charged as a habitual felony offender, six enhancement paragraphs from the indictment were read to the jury during the punishment phase. The enhancement paragraphs alleged prior convictions for violation of a civil commitment order, sexual assault, shooting with intent to kill, possession of a firearm, possession of child pornography, and rape. Malone pleaded "true" to the first paragraph and "not true" to the remaining paragraphs.

A fingerprint comparison expert testified that he compared known prints of Malone to documents contained in three pen packets and concluded that Malone was the individual identified in the pen packets. Stoddard testified that Malone was convicted in Travis County of failing to comply with the terms of his 2010 civil

commitment order. Clinical psychologist Paul Hamilton testified that he had evaluated Malone and scored actuarial instruments that indicate Malone has a moderate or moderate-to-high risk for sexual recidivism. According to Hamilton, Malone had antisocial personality disorder, so Malone suffered from impulsivity, irritability, aggressiveness, reckless disregard for the safety of himself or others, irresponsibility, and lack of remorse, and repeatedly performed illegal acts. In addition, Hamilton testified that Malone had prior convictions for sexual assault, rape in the second degree, possession of child pornography, possession of a firearm, and shooting with intent to kill.

During closing arguments in the punishment phase, the prosecutor emphasized Malone's six prior felony convictions and Hamilton's testimony, and the prosecutor asked the jury to sentence Malone to life in prison, "not because we don't care about him as an individual or human being, but because we care about the safety and security of the human beings that live in our communities more." The jury assessed punishment at confinement for life.

## ISSUE ONE

In his first issue, Malone argues the trial court admitted evidence in violation of *Old Chief*, which he seems to view as synonymous with Rule 403 of the Texas Rules of Evidence. *See* Tex. R. Evid. 403; *Old Chief v. U. S.*, 519 U.S. 172, 192,

11

117 S.Ct. 644, 136 L.Ed.2d 574 (1997). Specifically, Malone complains that the trial court allowed the State to repeatedly use the phrase "sexually violent predator" to inflame the jury and to appeal to the jurors' emotions rather than the facts of the case. Malone's brief later appears to generally argue that accusations of other criminal acts involving a sexual, violent or predatory offense were improper.

In *Tamez v. State*, 11 S.W.3d 198 (Tex. Crim. App. 2000), the Court of Criminal Appeals explained that in *Old Chief*, the defendant was prosecuted for possession of a firearm by a felon, and "[b]ecause any type of felony conviction was sufficient to prosecute the defendant for possession of a firearm, the [Supreme] Court decided that allowing the Government to prove the particular felony of which the defendant was previously convicted was of little probative value; yet it could substantially prejudice the defendant by allowing the jury to improperly focus on the previous crime rather than the instant offense." *Tamez*, 11 S.W.3d at 200 (citing *Old Chief*, 519 U.S. at 192). The Court of Criminal Appeals pointed out that *Old Chief* was not binding authority, but had "persuasive value[.]" *Id*. at 201. The Court then stated that "a defendant's stipulation to a previous conviction should suffice when it carries the same evidentiary value as the judgments of prior convictions, yet substantially lessens the likelihood that the jury will improperly focus on the previous conviction or the defendant's 'bad

character.'" *Id*. at 202. The Court explained that a balance must be struck between the authorized reading of the full indictment and Rule 403, and held as follows: "[i]n cases where the defendant agrees to stipulate to the . . . previous . . . convictions, we find that the proper balance is struck when the State reads the indictment at the beginning of trial, mentioning only the . . . prior convictions, but is foreclosed from presenting evidence of the convictions during its case-in-chief." *Id*.

In this case, Malone did not stipulate to his prior convictions, nor did he stipulate that he was subject to an order of civil commitment as a sexually violent predator. Therefore, *Old Chief* is inapposite. *See id*. Malone complains of thirty-one instances when the State used the phrase "sexually violent predator" during trial. At the beginning of the trial, Malone's counsel re-urged his motion in limine, in which he had sought to require the State to approach the bench prior to using the phrase, and obtained a running objection to the State's use of the term "sexually violent predator." However, Malone's counsel did not specify the basis for his objection, other than by reference to his motion in limine, which also did not set forth the basis for objection, but simply sought to require the State to approach the bench prior to using the phrase. During only one of the numerous instances identified by Malone did counsel object that repeatedly calling Malone a sexually

13

violent predator was "intended to inflame the jury." The trial court overruled the objection.

Rule 403 of the Texas Rules of Evidence provides as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. Generally, to preserve error for appellate review, a party's objection "must be specific enough so as to 'let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.'" *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). We conclude that Malone's running objection based upon his motion in limine, which did not explain the basis for the objection, was not sufficiently specific to preserve error with respect to the Rule 403 complaint he asserts on appeal. *See id*. However, we conclude that Malone's objection that the phrase was inflammatory was sufficient to preserve error as to his Rule 403 objection with respect to that one occurrence of the phrase. *See* Tex. R. App. P. 33.1(a).

We now address Malone's issue with respect to his sole properly preserved Rule 403 objection. We review the trial court's ruling on a Rule 403 objection for abuse of discretion. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). The trial court abuses its discretion only when its decision lies outside the zone of reasonable disagreement. *Id*. at 439-40. When a trial court balances the probative value of the evidence against the danger of unfair prejudice, a presumption exists that favors the evidence's probative value. *Feldman v. State*, 71 S.W.3d 738, 754-55 (Tex. Crim. App. 2002).

The term "sexually violent predator" appears in the charging statute, section 841.085 of the Health and Safety Code, which provides as follows, in pertinent part: "A person commits an offense if, after having been adjudicated and civilly committed as a sexually violent predator under this chapter, the person violates a civil commitment requirement . . . ." Tex. Health & Safety Code Ann. § 841.085. The term also appears in the final judgment, order of commitment, supervision, and GPS tracking service requirements for the Council on Sex Offender Treatment, Council on Sex Offender Treatment Behavior Contract Requirements, and the Council on Sex Offender Treatment's Agreement Regarding Therapeutic Activities, which were admitted into the evidence as exhibits. We decline to find that the use of the term "sexually violent predator" was intended to inflame the

15

jury, or that its usage had such an effect. The trial court did not abuse its discretion by overruling Malone's objection. *See Mechler*, 153 S.W.3d at 439-40; *see also* Tex. R. Evid. 403. Accordingly, we overrule issue one.

## ISSUE TWO

In issue two, Malone contends his right to a fair trial was violated by language in the jury charge. Specifically, Malone argues that the phrase "sexually violent predator" was used ten times in the jury charge, and that the inflammatory nature of the phrase violated his right to a fair trial. At the charge conference, Malone's counsel objected to the charge on the grounds that it repeatedly used the phrase "as a sexually violent predator" and asserted that the term is prejudicial.

When reviewing alleged charge error, we determine whether error existed in the charge and, if so, whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). When, as here, the defendant preserved the complained-of alleged error, we will reverse if we find "some harm" to the defendant's rights. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. 1985) (op. on reh'g). The trial court's charge must fully instruct the jury on the law applicable to the case and apply that law to the facts adduced at trial. *Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004); *see* Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007). As discussed above, the term "sexually violent

16

predator" is used in the charging statute, which states that "[a] person commits an offense if, *after having been adjudicated and civilly committed as a sexually violent predator* under this chapter, the person violates a civil commitment requirement . . . ." Tex. Health & Safety Code Ann. § 841.085 (emphasis added). Pursuant to the charging statute, the State had the burden to show that (1) Malone had been adjudicated and civilly committed as a sexually violent predator and (2) that Malone violated a civil commitment requirement. *See id*. The phrase as used in the jury charge accurately tracked the language used in the charging statute. In addition, the term "sexually violent predator" is specifically defined in Chapter 841. *See id*. § 841.003(a) (West 2010).

A jury charge that tracks the language of a particular statute is a proper charge. *Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) (citing *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994)) ("Following the law as it is set out by the Texas Legislature will not be deemed error on the part of a trial judge."); *Duffy v. State*, 567 S.W.2d 197, 204 (Tex. Crim. App. 1978); *Benn v. State*, 110 S.W.3d 645, 648 (Tex. App.—Corpus Christi 2003, no pet.). Because the jury charge tracked the applicable statutory language, we conclude that the charge was not erroneous. *See Martinez*, 924 S.W.2d at 699; *Riddle*, 888 S.W.2d at 8; *Duffy*, 567 S.W.2d at 204; *see also* Tex. Code Crim. Proc. Ann. art. 36.14; *Gray*,

17

152 S.W.3d at 127. Having found that no charge error occurred, we need not perform a harm analysis. *See Ngo*, 175 S.W.3d at 744. We overrule issue two.

In issue three, Malone argues that evidence admitted in violation of the Sixth Amendment requires reversal or acquittal. Specifically, Malone challenges the testimony by MacNair concerning "a solicited statement, made by [Malone] while in custody awaiting trial," when MacNair knew Malone was represented by counsel and awaiting trial for violation of the civil commitment order.

We review the trial court's ruling admitting MacNair's testimony for abuse of discretion. *See Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any applicable legal theory. *Id*. at 418. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const., amend. VI. "[T]he right to counsel granted by the Sixth Amendment means that a person is entitled to the help of a lawyer 'at or after the time that adversary judicial proceedings have been initiated against him . . . whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Estelle v. Smith*, 451 U.S. 454, 469-70, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (quoting *Kirby v. Illinois*, 406 U.S.

18

682, 688-89, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)). In *Estelle*, defense counsel was not notified in advance that a psychiatric examination of defendant to determine competency to stand trial would encompass the issue of defendant's future dangerousness, and the psychiatrist utilized information obtained from the examination in his testimony about future dangerousness during the penalty phase. *Id*. at 456-57, 459-60. The United States Supreme Court held that depriving the defendant of the assistance of counsel during the psychiatric evaluation violated the defendant's Sixth Amendment right to counsel. *Id*. at 471.

The record demonstrates that Malone's counsel was not informed of MacNair's visit, that counsel was not present during MacNair's visit, and that MacNair attempted to obtain Malone's signature on the document after reading the document to him, but did not interview or evaluate Malone. Malone argues that MacNair's visit was the functional equivalent of interrogation.

Denial of the right to counsel is an error of constitutional magnitude. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10. Assuming without deciding that MacNair's visit to Malone without his counsel present violated Malone's Sixth Amendment right to counsel, we must perform a harm analysis concerning the admission of evidence. *See* Tex. R. App. P. 44.2(a) ("If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review,

19

the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment."). If there is a reasonable likelihood that the error materially affected the jury's deliberation, then the error was not harmless beyond a reasonable doubt. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). A reviewing court should calculate as much as possible the probable impact of the error on the jury in light of the existence of other evidence. *Id*.; *Miles v. State*, 918 S.W.2d 511, 517 (Tex. Crim. App. 1996). In conducting our review, we must consider the totality of the circumstances by examining the record as a whole. *See Miles*, 918 S.W.2d at 517. Our primary concern is the effect the error had, or reasonably may have had, on the jury's decision. *Wimbrey v. State*, 106 S.W.3d 190, 192 (Tex. App.—Fort Worth 2003, pet. ref'd). In determining whether the error contributed to a defendant's conviction or punishment, we consider the nature of the error, the State's emphasis on the error, the error's probable collateral implications, and the weight a juror would probably place on the alleged error. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011).

In addition to MacNair's testimony regarding Malone's refusal to sign the document MacNair presented during her visit to the jail, the jury heard evidence that Malone had previously refused to sign documents pertaining to his

20

commitment, had indicated he did not intend to comply with civil commitment requirements, and had refused to allow Warner to transport him to the halfway house upon his release from TDCJ. The State did not emphasize MacNair's testimony during closing arguments, and the trial court instructed the jury not to consider any evidence obtained in violation of Malone's state or federal constitutional rights and included an explicit instruction not to consider the evidence concerning the violation arising from Malone's refusal to sign the document from MacNair if the jury found that said evidence was obtained in violation of Malone's rights. The evidence provided by MacNair was a relatively small part of the State's evidence and argument, and the jury was unlikely to place undue weight on MacNair's testimony, particularly in light of the trial court's instruction to the jury in the charge and defense counsel's lengthy argument that the jury should not consider that evidence. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (We presume the jury followed the trial court's instructions.). After reviewing the entire record to determine whether Malone was harmed by the admission of MacNair's testimony, we conclude that any error in the admission of MacNair's testimony did not contribute to Malone's conviction or punishment, and was therefore harmless beyond a reasonable doubt. *See* Tex. R.

21

App. P. 44.2(a). Accordingly, we overrule issue three and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on June 10, 2013
Opinion Delivered June 26, 2013
Publish

Before McKeithen, C.J., Gaultney and Kreger, JJ.