In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-15-00421-CR**
_____

**RICHARD MCKINNLEY NIXON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause No. 13-18376-CR**

**MEMORANDUM OPINION**

Appellant Richard McKinnley Nixon (Nixon) was indicted by a Jefferson County grand jury for possession of a controlled substance (cocaine), a second degree felony. *See* Tex. Health & Safety Code Ann. § 481.115 (West 2010). The indictment alleged that on or about May 3, 2012, Nixon "intentionally and knowingly possess[ed] a controlled substance listed in Penalty Group 1 of the Texas Controlled Substance Act, namely COCAINE, by aggregate weight . . . in an amount of at least four (4) grams or more and less than two hundred (200)

1

grams[.]" The indictment further alleged that prior to the commission of the primary offense, Nixon "was finally convicted of the felony of Possession of Controlled Substance-Third Degree Felony on May 10, 2004. . . ." Nixon entered a plea of not guilty, and the cause was tried to a jury in October of 2015. The jury found Nixon guilty as charged in the indictment, and assessed punishment at confinement in the Texas Department of Criminal Justice for a term of twenty years. The trial court entered a Judgment of Conviction by Jury consistent with the jury verdict. The trial court then certified that the defendant has the right of appeal. Nixon timely filed a written notice of appeal.

Nixon raises three issues on appeal. In his first two issues on appeal, he challenges the admission of certain evidence regarding his prison identification card from another offense, arguing that the prison identification card "related to an extraneous offense that was irrelevant" and that such evidence was improper under evidentiary rules 401, 402, 403, and 404(b). In his third issue, Nixon contends the trial court erred in denying his request for a continuance. We affirm the judgment.

ORAL MOTION IN LIMINE

At trial, after a jury was selected but immediately before the seating of the jury, the defendant urged a verbal motion in limine to the court as follows:

[Defense Attorney]: Your Honor, we do have a short motion in limine we need to present. We have a short motion in limine, your Honor.

2

THE COURT: Well, we've got a jury coming; and I don't have a written motion. What do you want?

[Defense Attorney]: No. It would be oral, your Honor. I just --

THE COURT: (Addressing the bailiff) Would you tell them to hold the jury just for a second in the hall. Don't let them go away.

THE COURT: What is it, Mr. [Defense Attorney]?

[Defense Attorney]: Your Honor, just there might be mention of prior convictions or an ID card that would indicate he is a convicted felon 'cause it's a T.D.C.J. ID card. And that's it, your Honor. I think during --

THE COURT: The motion in limine is denied. You have the right to object.

[Defense Attorney]: Yes, sir.

THE COURT: And I'll take it up when that comes up.

EVIDENCE AT TRIAL

Beaumont Police Officer Rosendo Lopez testified that on May 3, 2012, he and his partner, Officer Danny Davis, were attempting to serve an arrest warrant on Nixon for a parole violation for possession of a controlled substance. The officers were informed that Nixon could be found at 4610 Maddox, Apartment No. 4, in Jefferson County, Texas. When they arrived at the apartment complex, they found Nixon's vehicle in the parking lot. The officers knocked on the door of the apartment and announced themselves as "Beaumont PD[]" and after several attempts, a female answered the door. Through the partial opening in the door,

3

Officer Lopez could see the defendant, Richard Nixon, "fleeing to the back of the residence." Nixon ran into the bathroom and the officers ordered Nixon to come out. Officer Lopez testified that he could hear water and a toilet flushing while Nixon was in the bathroom. After Nixon eventually came out of the bathroom, the officers apprehended Nixon, took him into custody, and handcuffed him.

Officer Lopez testified that when escorting Nixon to the front door of the apartment, Lopez "observed in plain view a clear plastic baggy on the couch[]" that "contained an off-white rock-like substance" that the officer recognized as "crack cocaine." State's exhibits 2A and 2B were identified as the baggy and substance in question. Officer Lopez testified that, based upon his training and experience, he formed the opinion that Nixon was in possession of a controlled substance. Lopez testified that Officer Davis then escorted Nixon to the patrol vehicle, and initially Nixon was only arrested for the parole violation. Lopez notified the Narcotics Division and secured the scene, and a female subject was also placed under arrest for an outstanding warrant. Officers from the Narcotics Division arrived, and Officer Davis administered Miranda warnings to Nixon while Nixon was in the patrol car. The Narcotics Division obtained a search warrant.

On cross-examination, Lopez agreed that what Lopez wrote in his report is similar to what Officer Davis wrote in Davis's report, but Lopez agreed that the description provided in Davis's report had details that Lopez did not include in

Lopez's report. Lopez explained that he could not testify about Davis's version of what happened and that "[h]e wrote the report his way. I wrote my report my way. . . . He can't testify to what I observed, what I saw." Lopez confirmed that he saw Nixon through the partially open door, that Nixon was sitting "on the couch[,]" and Lopez saw Nixon flee.

Sergeant Cody Courts with the Beaumont Police Department testified that on May 3, 2012, he was working as an investigator in the Narcotics Division, when he received a call from Officer Lopez, who reported that while serving an arrest warrant for a parole violation, Lopez had observed in plain view certain items he believed to be narcotics. Courts obtained a search warrant for the residence. Officer Courts testified regarding police protocol and procedures, and identified various Exhibits. Courts identified Exhibit 1A as the bag in which Courts placed item 1B, and 1B as a bag with a rock-like substance that Courts found at the apartment when he executed the search warrant, and which his preliminary testing at the scene revealed was positive for cocaine. The item inside Exhibit 1A was located by Officer Courts inside a Crown Royal bag that was underneath the sink in the bathroom of the apartment. Courts identified Exhibit 2A as the container in which Lopez placed Exhibit 2B, and 2B as the suspected crack cocaine located on the couch in plain view first observed by Officer Lopez. Preliminary tests on 2B indicated it was cocaine. Courts identified Exhibit 3A as the package in which

Courts placed 3B, which contained a white powder the officers found in a drawer in the kitchen during the search.[1]

The State asked Sergeant Courts what evidence was collected from the search of the apartment that indicated to the officer that Nixon resided at that apartment:

> [Sgt. Courts]: We located a lot of personal items like driver's licenses -- or a driver's license, an inmate or an offender identification card --
>
> [Defense Attorney]: Your Honor, once again, I'm going to object. That goes to your ruling on the motion in limine.
>
> THE COURT: Overruled.
>
> [State's Attorney]: [] Please continue.
>
> [Sgt. Courts]: An Entergy bill with his name on it for that location, things of that nature.
>
> [State's Attorney]: Sir, I'm going to show you what has been marked tentatively for identification purposes as State's Exhibit No. 4. Would you please look at the contents of State's Exhibit No. 4.
>
> [Sgt. Courts]: (Complies.)
>
> [State's Attorney]: What does that appear to be, sir?

---

[1] Prior to trial, defense counsel filed a Motion to Suppress "[a]ll tangible items seized by law enforcement" without specifying the articles seized, on the basis that the detention was unlawful under the Fourth and Fourteenth Amendments, Article I, Section 9 of the Texas Constitution, and Chapters 14 and 38 of the Texas Code of Criminal Procedure. There is no indication in the record that the Motion to Suppress was ever set for a hearing or ruled upon by the trial court.

[Sgt. Courts]: It appears to be a Texas Department of Criminal Justice Offender Identification Card.

[State's Attorney]: Is that the same one you saw at the residence?

[Sgt. Courts]: Yes, sir.

[State's Attorney]: How do we know it's the same one you saw at the residence?

[Sgt. Courts]: It's got the same number on it. It's got the same packaging that I packaged it in. It's got my handwriting on it.

[State's Attorney]: Does it also have evidence tape sealing it?

[Sgt. Courts]: Correct. Yes, sir.

[State's Attorney]: Please put it back in State's Exhibit No. 4.

[Sgt. Courts]: (Complies.)

[State's Attorney]: Your Honor, at this time I'd like to introduce State's Exhibit 4 and its contents into evidence.

THE COURT: Mr. [Defense Attorney]?

[Defense Attorney]: Your Honor, we have the same objection as to its prejudicial value i[t']s irrelevant as far as any ID, what that ID card is for, and it goes to our motion in limine.

THE COURT: Overruled. 4 is admitted.

After the State rested its case, the defendant indicated he did not wish to testify but the defense attorney asked the trial court to grant the defendant a "brief recess" to obtain the appearance of a witness, as follows:

[Defense Attorney]: We are asking that the Court grant us a brief recess in order to obtain the appearance of Officer Davis, who is a material witness, based on our motion to suppress as far as what transpired prior to entry into the apartment. It's our understanding that Mr. Davis is available to testify. However, I think he's in custody of his children and he's not available until 11:00 o'clock in the morning. And the State is not going to call Officer Davis. I don't know if Officer Davis has been subpoenaed by the State or not. I believe we are allowed to rely on their subpoenas. Of course, they were -- one of the witnesses we believed they were going to call. That being a material witness, we are going to need him to corroborate what his report says.

THE COURT: That's denied[]. The case was set for trial in August, plenty of time to get everybody here that y'all wanted to testify.

The defendant did not call any witnesses at trial.

## STANDARD OF REVIEW

We review a trial court's decision to admit evidence under Rules 404(b) and 403 for an abuse of discretion. *See De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Id.* at 343-44 (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)). If the trial court's decision is correct on any theory of law applicable to the case, we will uphold the decision. *Id.* at 344 (citing *Sewell v. State*, 629 S.W.2d 42, 45 (Tex. Crim. App. 1982).

We review the trial court's denial of a defendant's motion for continuance for an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App.

8

2007); *Renteria v. State*, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006). The trial court has discretion to deny a continuance, and reversal is justified only when the trial court has abused its discretion. *Hernandez v. State*, 643 S.W.2d 397, 399 (Tex. Crim. App. 1982). A continuance may be granted after trial has begun when there is some unexpected occurrence, which no reasonable diligence could have anticipated that so takes the applicant by surprise that a fair trial cannot be had. Tex. Code Crim. Proc. Ann. art. 29.13 (West 2006). To obtain a continuance for a missing witness, the defendant must show, among other things, that he exercised due diligence to secure attendance. *Id.* art. 29.06(2) (West 2006). A party seeking a new trial based on the denial of a motion for continuance for an absent witness must file a sworn motion for new trial, stating the testimony that the missing witness would have provided. *Harrison v. State*, 187 S.W.3d 429, 435 (Tex. Crim. App. 2005) (citing *McCloud v. State*, 494 S.W.2d 888, 891 (Tex. Crim. App. 1973)); *Robinson v. State*, 454 S.W.2d 747, 748 (Tex. Crim. App. 1970). The motion for new trial must include an affidavit of the missing witness or a sworn statement from some source that the witness would actually testify to the facts set forth in the motion for new trial. *Harrison*, 187 S.W.3d at 435-36 (citing *McCloud*, 494 S.W.2d at 890-91). A party fails to exercise due diligence necessary to support a motion for continuance when he did not subpoena his witness, but relied solely upon promises that the witness would be present. *See Rodriguez v. State*, 21

9

S.W.3d 562, 566 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Absent such due diligence, a trial court does not abuse its discretion by overruling the party's motion for continuance. *See Cooks v. State*, 844 S.W.2d 697, 725 (Tex. Crim. App. 1992) (deciding that trial court's denial of motion for continuance for a defendant to locate a witness was not abuse of discretion when, among other things, defendant did not file pretrial application for subpoena).

PRISON IDENTIFICATION CARD

In his first two issues, Nixon argues that the prison identification card constitutes evidence of an "extraneous act" used to prove a propensity to violate the law and that it was inadmissible under Rule 404(b). Nixon also contends that the evidence was irrelevant and prejudicial under Rules 401, 402, and 403. The State contends the ID card was used to prove an element of the crime charged, that is, an affirmative link between Nixon and the drugs, and that the evidence was cumulative of other evidence previously admitted without objection.

To preserve error for appellate review, a party's objection generally must be sufficiently specific so as to "'let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.'" *Malone v. State*, 405 S.W.3d 917, 925 (Tex. App.—Beaumont 2013, pet. ref'd) (quoting *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009)). It

10

follows, that an objection stating one legal basis may not be used to support a different legal theory on appeal. *See Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977). Where a complaint on appeal does not comport with an objection made at trial, the error is not preserved on that complaint. *Goff v. State*, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995); *Dunn v. State*, 819 S.W.2d 510, 524-25 (Tex. Crim. App. 1991) (discussing the importance of specific objections under Rule 52, the predecessor to Rule 33.1). In order to raise a Rule 404 complaint on appeal, the objecting party must have made a Rule 404 objection separate from a Rule 403 objection. *See Montgomery*, 810 S.W.2d at 389.

In the case at bar, Nixon made an oral motion in limine on the first day of trial that was overruled. In the oral motion in limine the defense notified the court that there may be "mention of prior convictions or an ID card that would indicate he is a convicted felon 'cause it's a T.D.C.J. ID card[,]" and the trial court indicated it would "take it up when that comes up." When the ID card is then mentioned in the testimony, the only objection voiced by the defense is "once again, I'm going to object to that question and answer, and that goes to the motion -- motion in limine." And, then again when the ID card is offered into evidence, "[y]our Honor, we have the same objection as to its prejudicial value is irrelevant as far as any ID, what that ID card is for, and it goes to our motion in limine." The

11

trial court overruled the objections. The appellant failed to make a Rule 404(b) objection. Therefore, he failed to preserve these arguments on appeal. *See* Tex. R. App. P. 33.1 (preservation of error for appeal requires a timely objection made with sufficient specificity to inform the trial court of the complaint); *see also Bryant v. State*, 391 S.W.3d 86, 92 (Tex. Crim. App. 2012) (A party does not have to use "magic words" or recite a specific statute to preserve an issue, "as long as the basis of his complaint is evident to the trial court."); *Brazzell v. State*, 481 S.W.2d 130, 131 (Tex. Crim. App. 1972) ("[g]enerally, a motion in limine will not preserve error to the admission of inadmissible evidence").

Nevertheless, even assuming that the objection made by Nixon preserved his appellate argument pertaining to Rule 404(b), we conclude that the evidence was not inadmissible under Rule 404(b) because the evidence was relevant to establishing an affirmative link between Nixon and the drugs, and it was within the zone of reasonable disagreement for the trial court to admit the evidence. Rule 404(b) expressly provides that evidence of crimes, wrongs, or other acts is not admissible to prove the character of the defendant in order to show he acted in conformity therewith. Tex. R. Evid. 404(b)(1). Rule 404(b) codifies the common law principle that a defendant should be tried only for the offense for which he is charged and not for being a criminal generally. *Rogers v. State*, 853 S.W.2d 29, 32 n.3 (Tex. Crim. App. 1993); *see also Segundo v. State*, 270 S.W.3d 79, 87 (Tex.

12

Crim. App. 2008) (explaining that the defendant is generally to be tried only for the offense charged, not for any other crimes).

Extraneous offense evidence, however, may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R. Evid. 404(b)(2). The list of exceptions in Rule 404(b) is nonexhaustive. *See Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005) (citing *Montgomery*, 810 S.W.2d at 388). "Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). The trial court's Rule 404(b) ruling admitting evidence is generally within the zone of reasonable disagreement "if there is evidence supporting that an extraneous transaction is relevant to a material, non-propensity issue." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (citing *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)).

Texas courts utilize a two-step analysis for determining the admissibility of extraneous offenses or uncharged acts. *Rogers*, 853 S.W.2d at 32-33. Courts determine first whether the evidence is relevant to a material issue in the case and second whether the relevant evidence should be admitted as an exception to Rule 404(b). *Id.*

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. The Rule 403 balancing factors include, but are not limited to, the following: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012) (citing *Montgomery*, 810 S.W.2d at 389-90); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). The rules of evidence favor the admission of relevant evidence and carry a presumption that relevant evidence is more probative than prejudicial. *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996).

A person commits the offense of possession of a controlled substance, if he knowingly or intentionally possesses the controlled substance in the prescribed amount, by aggregate weight, including adulterants or dilutants. *See* Tex. Health & Safety Code Ann. §§ 481.102(3)(D) (West 2010), 481.115. To prove possession, the State had to prove that (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). When the defendant

14

does not have exclusive possession of the place where the contraband is found, then independent facts and circumstances must link him to the drugs. *Poindexter v. State*, 153 S.W.3d 402, 405-13 (Tex. Crim. App. 2005) (citing and quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)) (concluding that evidence was sufficient to link defendant to drugs contained in brown paper bag where bag was hidden in appellant's house and confidential informant had disclosed location to police). Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous. *Evans*, 202 S.W.3d at 161. "Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs." *Id.* at 162. However, presence or proximity, when combined with other evidence, either direct or circumstantial, can be sufficient to establish that element beyond a reasonable doubt. *Id.* It is not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial. *Id.* Texas courts have set forth a non-exclusive list of possible links that may be sufficient, either singly or in combination, to establish a person's possession of contraband. *Id.* at 162 n.12. These links include, among other items, whether the defendant owned or had the right to possess the place where the drugs were found. *Id.*

The evidence in question was relevant to establishing an affirmative link between Nixon, the apartment, and the drugs: it was discovered at the scene and inside the apartment, and at the time it was admitted into the evidence the jury was already aware that Nixon had previously been convicted of another offense. Officer Lopez had previously testified that he and Officer Davis were attempting to serve an arrest warrant on Nixon for a parole violation for possession of a controlled substance. Nixon did not object to that line of questioning. Additionally, the prison identification card was relevant to affirmatively linking Nixon to possession of the cocaine. Accordingly, we conclude the trial court did not abuse its discretion in admitting the evidence in this case. It was within the zone of reasonable disagreement for the trial court to find that the evidence was relevant, that it was not being offered in violation of Rule 404(b), and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Therefore, we overrule issues one and two.

## MOTION FOR CONTINUANCE

In his third and final issue, Nixon contends that the trial court committed reversible error by denying his oral request for a continuance to allow Nixon to secure the attendance of Officer Davis as a witness at trial. Nixon argues that there was a significant difference between Davis's report and Lopez's report, and that Davis was a necessary witness so Nixon could establish that the entry into the

16

apartment was illegal. Nixon argues he could not have known Lopez's testimony, and that expeditiousness of the trial should have given way to justice to allow the defendant to fairly present his case under principles of due process. In support of his argument, Nixon cites to several intermediate courts of appeal decisions, including *Deaton v. State*, 948 S.W.2d 371 (Tex. App.—Beaumont 1997, no pet.), wherein this Court stated that although generally motions for continuance should be in writing, the denial of the continuance amounted to a denial of due process and there was no negative impact on the orderly administration of justice by giving the defendant a continuance until the following morning to call a witness. 948 S.W.2d at 374-77; *see also Petrick v. State*, 832 S.W.2d 767, 770-71 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd); *O'Rarden v. State*, 777 S.W.2d 455, 459 (Tex. App.—Dallas 1989, pet. ref'd).

We decline to follow *Deaton* because subsequent controlling authority from the Court of Criminal Appeals has confirmed that there is no "due process exception" to the "written-and-sworn requirement." *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012) (*citing Anderson v. State*, 302 S.W.3d 276, 280 (Tex. Crim. App. 2009)). Accordingly, Nixon's oral motion for continuance preserved nothing for our review. *Id.* Nixon filed no written motion and no supporting sworn affidavit. We further note that there was no evidence that he exercised due diligence in having a subpoena issued for the attendance of the

17

witness. We cannot say that the trial court abused its discretion in denying the oral motion for continuance. *See Priester v. State*, 478 S.W.3d 826, 832 (Tex. App.—El Paso 2015, no pet.). We overrule his third issue.

Having overruled all of Nixon's issues on appeal, we affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on July 14, 2016
Opinion Delivered August 24, 2016
Do Not Publish

Before McKeithen, C.J., Horton, and Johnson, JJ.